Lawrance A. Bohm (SBN: 208716)
lab@bohmlaw.com
Kelsey K. Ciarimboli (SBN: 302611)
kciarimboli@bohmlaw.com
Zane E. Hilton (SBN: 305207)
zhilton@bohmlaw.com
Sara R. Benton (SBN: 358221)
sbenton@bohmlaw.com
Catharine P. McGlynn (SBN: 341866)
cmcglynn@bohmlaw.com
**BOHM LAW GROUP, INC.**
4600 Northgate Boulevard, Suite 210
Sacramento, California 95834
Telephone:  866.920.1292
Facsimile:  916.927.2046
Email:        BLG001058@bohmlaw.com

Ayse Kent (SBN: 251114)
ayse@aklaw.com
**AK EMPLOYMENT LAW OFFICE**
100 Pine Street, Suite 1250
San Francisco, California 94111
Telephone: 415.638.9471

Attorneys for Plaintiff,
RON LOMBOY

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RON LOMBOY,<br><br>    Plaintiff,<br><br>    v.<br><br>WELLS FARGO BANK, NATIONAL ASSOCIATION,<br><br>    Defendant. | Case No.  4:24-cv-04168-HSG<br><br>**DECLARATION OF CATHARINE P. MCGLYNN, ESQ., IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* NO. 4 – TO EXCLUDE THE TESTIMONY OF PLAINTIFF'S PURPORTED HR EXPERT, RAMONA POWELL**<br><br>Action Filed:        June 11, 2024<br>Action Removed:  July 11, 2024<br>Trial Date:           November 3, 2025 |

//

---

1

**Declaration of Catharine P. McGlynn, Esq., iso P's Opp to D's MIL No. 4**          BOHM LAW GROUP, INC.
*Lomboy v. Wells Fargo Bank, N.A., et al.*                                                                      AK EMPLOYMENT LAW OFFICE
Case No.: 4:24-cv-04168-HSG

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

I, Catharine P. McGlynn, declare:

1. I am an attorney-at-law, duly licensed to practice before all courts of the State of California, and am presently one of the attorneys on record for Plaintiff RON LOMBOY, Plaintiff in the above-entitled action. The matters stated herein are of my own personal knowledge, and if called as a witness in this matter, I could competently testify to the truth of the following matters.

2. Plaintiff's trial date is set to occur November 3, 2025.

3. On July 8, 2025, Plaintiff disclosed the expert report of Romona Powell to opine on human resource issues. Plaintiff's Expert Disclosures were corrected twice, the final being served on July 15, 2025.

4. Ms. Ramona Powell has approximately 30 years of experience in the HR corporate world before moving to HR consulting work. Attached as **Exhibit 1** is a true and correct copy of Ms. Powell's Curriculum Vitae.

5. Ms. Powell will provide testimony detailing both her findings, as outlined in her Expert Report. Attached as **Exhibit 2** is a true and correct copy of the Expert Report of Plaintiff's Retained Expert, Ramona Powell.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 7th day of October 2025 in San Diego, California.

_____
Catharine P. McGlynn, Esq.

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

**Declaration of Catharine P. McGlynn, Esq., iso P's Opp to D's MIL No. 4**          BOHM LAW GROUP, INC.
*Lomboy v. Wells Fargo Bank, N.A., et al.*          AK EMPLOYMENT LAW OFFICE
Case No.: 4:24-cv-04168-HSG

EXHIBIT 1

# Ramona Powell - SPHR

**1668 Milan Way ♦ San Marcos, CA. 92078**
**♦ Mobile (760) 504-5371**
rpowell@exprthr.com
**exprthr.com**

---

## PROFESSIONAL SUMMARY

*Accomplished HR Expert Witness and Human Resources Executive with demonstrated ability to deliver mission-critical results, providing authoritative analysis and testimony in cases involving all areas of employment practices including discrimination, retaliation, wrongful termination, workplace harassment, and ADA accommodation.*

*Proven experience developing peak performing HR organizations that support business strategy, productivity and profitability. Strategic business partner to C-suite, with global experience in technology, healthcare, manufacturing and distribution operations in the U.S., Mexico, Europe, and Australia across diverse industries. Successful design and implementation of strategic HR initiatives, building and developing high performance HR teams, and aligning people strategy with corporate strategy.*

### AREAS OF EXPERTISE

| | | |
|---|---|---|
| Strategic Planning | Organizational Design | Total Rewards and Compensation |
| Mergers and Acquisitions | Benefits Design and Administration | Employee Relations and Management Training |
| Multi-State HR Practice | Performance Management | Discrimination and Harassment Prevention |
| HR Metrics and HRIS Systems and Payroll | International HR and Recruitment | Worker's Compensation and Risk Management |
| Training and Development | AAP and EEO Compliance | ADA Accommodations |
| Succession Planning and Career Development | Policy Development and implementation | Workplace Investigations |

---

## PROFESSIONAL EXPERIENCE

**exPRt HR LLC. - San Diego, CA.**
**President**                                                    **April 2021 – Present**

*HR Expert Witness Consulting services providing nationwide case review and analysis based on 30+ years of executive level experience in all areas of Human Resources industry standards and practice across a variety of businesses. Experience working with multiple law firms across the U.S. with proven results and contributions in many successful cases.*

HR._RP000001

**CliniComp, Intl. – La Jolla, CA.**
**Senior Vice President People Operations**                                    **April 2018 – January 2024**

*Healthcare Information Technology company and innovator in the Electronic Healthcare Records*
*with clients across the globe and the US – commercial hospital systems, Veteran's Administration and*
*Department of Defense. Strategic partnership and collaboration with CEO and Executive team on all aspects*
*of business operations, growth management, culture, talent acquisition and retention, organizational*
*development and business development.*

**Key Accomplishments:**

- Partnered closely with the CEO and C-suite to develop and implement business strategies in a highly competitive EHR market.
- Utilized best practices in People Operations to build a winning culture and platform for talent acquisition and retention in key areas such as AI, Software Engineering and Clinical Design.
- Implemented key metrics that measure the success of People Operations strategies and built high performance HR team.
- Launched new training and development strategies to retain top talent and invest in management capabilities.
- Earned Union Tribune Top Places to work in San Diego designation.

**West Living – Carlsbad, CA.**
**Vice President of Human Resources**                                    **May 2015 – June 2018**

*Owner and Operator of 9 senior living communities throughout the West, operating Independent*
*Living, Assisted Living and Memory Care communities in California, Washington, and Arizona.*
*Managing a team of six HR professionals, responsible for oversight and successful implementation*
*of all Human Resources initiatives and operations, including Succession Planning and Career*
*Pathing, Workforce Development, Employee Engagement, Benefits, Organizational Design,*
*Training, Risk Management, and Compliance throughout the company.  Tasked with building*
*West Living's HR team and implementing best practices throughout all communities in the portfolio*
*as well as positioning West Living for rapid growth and achieving the mission and vision of being*
*the best in inspired aging.*

**Key Accomplishments:**

- Developed the company's first formal succession plan and talent pipeline to support retention and succession throughout all business units.
- Built an HR team focused on culture, retention and HR best practices that became a showcase for prospective buyers during the acquisition process.
- Implemented key metrics to measure the success of HR leadership and culture development.
- Developed and implemented the company's first formal management training program, delivered throughout all business units.
- Partnered closely with C-suite and lead the implementation of key business strategies designed to meet and exceed business plan and enhance culture as a competitive edge.

HR._RP000002

**Spectrum Brands HHI – Lake Forest, CA.**

**<u>Director of HR – Global Operations</u>** <u>**October 2014 – May 2015**</u>

*International manufacturer of hardware and home improvement products including Baldwin, Pfister, Black and Decker and Kwikset. Responsible for management and oversight of HR capabilities throughout North America for 7 manufacturing and distribution facilities and 3,500+ employees. Managing an HR team of 7 direct reports and 26 indirect reports responsible for all aspects of HR Management including Employee relations, Career Development and Succession Planning, Benefits, Employee Engagement and Retention, Risk Management, and Total Rewards.*

**<u>Aqua Lung America, Inc., – Vista, CA</u>**

**<u>Human Resources Director</u>** <u>**July 2007 – August 2014**</u>

*International and Multi-State manufacturer of diving, snorkeling and swim gear; subsidiary of Air Liquide, France with US subsidiaries in Washington, Virginia, Hawaii, and International manufacturing operations including Mexico, Australia and Canada. From 2012, also managed Inside Sales and Customer Service.*

**Key Accomplishments:**
- Managed and maintained multi-million-dollar HR budget as an integral part of maximizing corporate operating income.
- Managed consolidation of HR benefit programs through mergers and acquisitions, bringing all companies onto the same platform.
- Member of company's first Strategic Acquisition Team, participating in the implementation of an effective acquisition strategy designed to streamline and improve the due diligence and corporate integration process.
- Successfully turned around and brought 401K plan back into compliance through DOL audit.
- Responsible for supporting all subsidiaries in HR compliance and employee relations, including international oversight of sales force compensation, payroll, recruitment and employee relations.
- Created and implemented structures, policies and procedures for recruiting and hiring practices and other HR functions throughout the company.
- Launched a company-wide Performance Management System emphasizing goal and objective driven management in line with corporate objectives.
- Participated in key Strategic Planning Initiatives as a member of the Executive Team, including creating and launching the company's first Succession Planning and Career Development Program.
- Contributing member of the corporate Executive Team. Participated in both short- term, and long-term strategic planning, budgeting, and bi-annual Executive planning meetings and financial reviews.
- Redesigned corporate benefits to mitigate and minimize cost increases to both the company and employees, while maintaining a competitive and attractive benefits package, including Qualified and Non-Qualified plans.
- Negotiated new contracts with temporary staffing and payroll companies throughout Aqua Lung, resulting in significant efficiencies and cost savings.

HR._RP000003

**Altman Plants, Inc. – Vista, CA**                                        **1999 - 2007**
**Director of Human Resources**

**C Enterprises Inc. – Vista, CA**                                        **1996 - 1999**
**Human Resources Manager**

**GSUSA**                                                                **1992 - 1996**
**Program Manager and Human Resources Manager**

**Victoria's Secret Stores – San Diego and Orange County, CA.**          **1988-1992**
**District Training and Recruitment Manager**

## TECHNICAL SKILLS

| | | |
|---|---|---|
| Microsoft Office Suite | ADP Payroll | Ceridian Source 500 |
| Seagate Crystal Report Writer | HRIS Implementation | Microsoft Excel |

## EDUCATION

- **University of Wisconsin – Madison - 1981 - 1986**
  Major – Economics
- **University of California – San Diego - 1996**
  Certification in Professional Human Resource Management
- **Human Resources Certification Institute**
  **SPHR Certification – 2004 - Current**
- **CELA Member**
- **SHRM Member**
- **CHIEF Member**

HR._RP000004

# EXHIBIT 2

# LOMBOY VS. WELLS FARGO BANK

## HR Expert Witness Report

Ramona Powell
rpowell@exprthr.com

HR._RP000005



<u>Human Resources Expert Witness Report – exPRT HR LLC</u>

<u>Case – Lomboy vs. Wells Fargo Bank</u>

<u>Expert Background</u> – C-suite Executive with over 30 years of experience in HR leadership across a variety of industries, including healthcare, manufacturing, and technology. Expertise in building high performance HR teams that deliver best in class business partnerships across all Human Resource practice areas, successfully linking corporate strategy to people strategy. Demonstrated ability to deliver mission-critical results that support corporate values, productivity and profitability. My background includes the design and implementation of strategic HR initiatives, building and developing high performance HR teams that support and lead the way to operational excellence. Extensive experience in organizational development, talent acquisition, employee relations and development, risk management, policy development and implementation, legal compliance, ADA accommodation and the interactive process, training in the prevention of hostile work environment, workplace harassment, bullying, discrimination and retaliation, management training and development, succession planning, compensation strategy, equal pay, and process improvement.

I have been qualified as an expert witness and have worked on many employment cases, provided opinions in report form and in depositions, and have testified in trials. On all these occasions I have given opinions in all areas of HR Industry Standard Practices covering a wide range of employment related matters, including discrimination, ADA accommodations and the interactive process, whistleblower retaliation, progressive discipline and wrongful termination.

I am currently President and Founder of exPRt HR LLC, a consulting practice based in San Diego, CA., working with law firms in multiple States, with both plaintiff and defense counsel. My consulting firm offers authoritative and thorough case analysis and reports, along with accurate and unbiased testimonies on a wide variety of topics in all areas of HR practice. I hold a Human Resources Management Certification from University of California – San Diego. I am an active member of the Society for Human Resource Management – SHRM - and am an SPHR certified professional.

HR._RP000006



**Summary –**

I was retained in this case to review the HR practices of Wells Fargo Bank as compared to HR Industry Standards. The estimated total cost of work in this case is $3500.

**Throughout this opinions document, there are references made to HR standards. The terms HR standards and HR best practices refer to different approaches in Human Resource Management:**

**HR Standards:** These are established guidelines or criteria that organizations must meet to ensure compliance with regulations or industry norms. They provide a baseline for acceptable performance and are often rigid and static, requiring strict adherence to avoid non-compliance.

**HR Best Practices:** These represent proven methods or techniques that have consistently shown superior results across various organizations. They are flexible and can be customized to fit the needs of an organization, aiming to enhance performance and create a competitive advantage.

In summary, while standards ensure consistency and compliance, best practices focus on achieving optimal performance through effective HR practices that can evolve based on organizational needs and market conditions

**Opinions relating to HR Standards in this case –**

1.  **Standard HR industry practice requires properly determining if an employee's disability status is covered by the ADA or equivalent state law, engaging in good faith efforts to provide reasonable accommodation through a well-documented and sound interactive process with the goal of providing reasonable accommodations to a disabled employee to enable them to perform their job.**

2.  **The interactive process must be consistent and well documented to avoid any possibility of discriminating against an employee with a disability. HR representatives who handle these interactive processes must be adequately trained to follow a sound protocol to ensure the employee's restrictions are well understood, all reasonable accommodations explored, discussed and considered along with the disabled employee and all outcomes and agreements documented.**

3.  **Standard HR industry practice requires careful review and understanding of the medical provider's request for accommodation so that they can be met as closely as possible if reasonable and not undue hardship to the company.**

4.  **If there is any lack of clarity on a medical request for accommodation form, it is incumbent on an HR professional to have the request clarified through the employee by the medical provider**

HR._RP000007



so there is no room for doubt about what is being requested and no room to deny the accommodation based on a misunderstanding of what is being requested.

5.  HR industry standard requires that an injured employee or any employee requesting ADA qualified accommodation, not be treated differently as it pertains to job assignments or hours than other employees to avoid any appearance of retaliation or disparate treatment. Job assignments and hours must be defensible by business conditions and comply with standard processes applicable to all employees.

6.  HR industry standard would require than an HR professional with the responsibility to fulfill accommodation requirements, do so with an appropriate sense of urgency to prevent the affected employee from being further exposed to the elements of their injury or potential exacerbation of their condition, and to comply with all applicable employer guidance on granting of reasonable accommodations.

7.  Standard HR industry practice requires that there be a defined and orderly step by step outlined for each investigation to follow as closely as possible – Start with complainant interview - sets up the goals, scope and method of investigation (inside or outside investigator). (Employer's Council and SHRM Guidance to Employers on Conducting Investigations)

8.  Standard HR industry practice requires that HR representatives at all levels follow a fair and consistent investigative process, including but not limited to timely follow-up on complaints, fair and knowledge driven assessments of the nature and severity of complaints, and following well defined and trained fact gathering processes and documentation protocols, consistent methodology and written conclusions and follow up.

9.  It is contrary to standard HR industry practice to have managers conduct investigations concerning their own decisions. Managers should not be conducting investigations they are not qualified to conduct or for which they appear to be/have bias.

10. Employers should avoid taking any action which could reasonably "chill" employees from providing truthful information during an investigation. This includes inviting anyone into the intake meeting with a complainant that could be the subject of the complaint, or the person accused of being the harasser.

11. People watch management's handling of complaints, and it does affect their willingness to raise concerns in the future and should be something that HR monitors as part of the industry standard of ensuring a harassment free environment.

HR._RP000008



12. Standard HR industry practice requires engaging in the execution of HR responsibilities for oversight and consistent implementation of employment practices and company policies regarding workplace investigations – ensuring that a fair and consistent process is in place, trained, and implemented. Investigators should be neutral/unbiased to ensure they conduct a fair and credible investigation.

13. Before imposing an adverse action, standard HR Industry practices require HR Professionals to investigate whether an employee has engaged in protected activities which may trigger a presumption of retaliation in the context of fair employment laws.  (See for example, Cal. Labor Code section 1102.5 and 1102.6, and Health and Safety Code section 1278.5) In the event a protected activity is known to the HR professional efforts should be made to ensure the subject of the protected activity is investigated.

14. Performance evaluations should be objective, fact and metrics driven where applicable, tied to reasonable and agreed upon expectations and essential functions of the job – should be directly tied to individual performance and avoid being connected to factors out of the employee's control.

15. HR industry standards would require that an employee on leave be given special consideration and an alternative schedule for performance evaluation to provide as much parity with other employees as possible in the period of time designated for review. HR should be involved in oversight of this process to ensure fairness and consistency across the organization.

16. HR standards for performance evaluation would demand consistent and reasonable standards applied to avoid the appearance of disparate treatment or unfair targeting of any single individual. Insisting on unreasonable and not agreed upon deadlines that are not achievable runs the risk of the appearance of an ulterior motive or agenda towards the affected employee.

17. HR must get involved in a sudden alleged change in performance for an employee who has demonstrated a track record of solid work history, especially with change in management of the employee. HR standard would require doing a deeper dive to assess reasons and ensure the performance concerns are valid and not a pretext to something else, including discrimination, harassment, retaliation and to identify issues that may require referral to an EAP or offering of covered leave.

18. Critical for HR to seek and consider all perspectives in any employment issue – the narrow approach of only considering management's side runs the risk of missing critical information coming from the employee – such as being subjected to a number of workplace issues that risk liability for the organization.

HR._RP000009



19. Standard HR industry practice requires that HR representatives and department managers maintain sufficient documentation to establish a basis for discipline up to including termination.

20. Standard HR industry practice requires HR representatives and department managers maintain sufficient documentation to establish a basis for discipline up to and including termination. Standard HR industry practice requires that HR representatives and department managers maintain documentation with an understanding that "if it was not documented, it did not happen" which is a common understanding among Human Resource professionals. Documentation protocols and adherence to them are critical in HR to ensure demonstrative evidence of a company's compliance obligations being met are available when and if needed, and to ensure that facts are supported in writing rather than reliant on any individual's memory of events or subject to misrepresentation.

21. Standard HR industry practice requires that HR representatives and department managers know and understand the employer's discipline policies, including any progressive discipline policy. If progressive discipline is not followed the employer should ensure all documentation supporting the basis for deciding to forego progressive discipline is present and reasonable. Documentation should be created and maintained close in time to the discipline imposed. Policies and procedures regarding discipline should be strictly followed.

22. Standard HR industry practice requires that HR representatives and department managers to carefully choose the level of discipline to ensure consistency as compared to other employees subjected to discipline.

23. Standard HR industry practice requires HR representatives and department managers to choose discipline for the purpose of correcting employee performance and not solely for punitive reasons.

24. Standard HR industry practice requires that HR representatives and department managers choose termination as a remedy of last resort to preserve institutional memory and maintain continuity of the workforce.

25. Standard HR industry practice requires that HR representatives and department managers conduct terminations in a way that maximizes the affected employee's dignity.  Respect and transparency should govern all decisions regarding the termination meeting.  The employee should be given a written notice of termination truthfully identifying the reason(s) for termination.  The employer should not use a "kitchen sink" approach of including issues that were not the basis for termination in order to make the termination seem more legitimate. Such action actually serves to undermine the legitimacy of a termination decision and creates disparity (lack of continuity) in the way discipline is applied to the workforce.

HR._RP000010



26. Training in progressive discipline and investigations should not be designed to train managers to take over this critical function that should reside with trained HR staff who should possess specialized knowledge and years of experience in these areas. HR staff are subject matter experts (SME) and should have oversight and control of investigative processes and their implementation.

27. When imposing discipline, it is HR Industry standard to consider the employee's past performance and tenure and whether past performance weighs in favor of or against the level of discipline considered.

28. HR Industry Standards regarding employee termination would require that HR exercise strict oversight and approval of all termination recommendations and action to avoid wrongful termination decisions of any kind. HR is never the decision maker on termination decisions except in cases involving HR department employees due to lack of a full understanding of performance requirements and day-to-day performance in other functions across the organization. An HR decision to terminate someone outside their own team could give the appearance of an institutional decision to terminate employee.

29. The purpose of a progressive disciplinary process is to ensure that employee actions are handled with appropriate fairness and consistency to allow for proper HR review for employer compliance with applicable regulations and to avoid actions that expose the organization to risk and liability.

30. Progressive discipline processes and associated SOPs are important in any workplace to ensure that employees are given ample opportunity to correct performance issues, that feedback for improvement is fair and specific (based on the SMART methodology) and the employee is informed that termination is imminent in the absence of improvement. Even in an "at will" workplace, termination for prohibited reasons must be avoided. Employees have certain protections afforded to them that must be considered and respected through any disciplinary process or termination decision.

31. Standard HR industry practice requires that HR representatives assist employers to curtail and prevent defamation in the workplaces.   In the event false information is being discussed in the workplace an employer should immediately escalate to HR with the intention of assessing and correcting the dissemination of false or potentially defamatory communication.

32. Standard HR industry practice requires that HR representatives at all levels demonstrate sufficient knowledge and skills to execute their professional responsibilities and essential function of compliance with employment related regulations and company policies.

HR._RP000011



33. HR responsibilities of any employer represent a significant aspect of that employer's business. In traditional workplaces, such as the one at issue in this case, employees are the single most important aspect of any employer's business. HR responsibilities include management of significant aspects of the employer's business including formulating and implementing policy, making exceptions to policy, training employees in compliance with fair employment practices, oversight of human resources functions to ensure fairness and equitable enforcement of policies and ensuring legal compliance.

34. The employer's HR function was not operating by any industry standard or employing the most basic protocols an HR team should utilize in the interest of the employees or the organization they have the obligation to protect.

35. The delegation of critical HR functions such as investigations and writing of disciplinary documents is evidence of a management culture that does not value or allow for HR industry standards to be practiced and instead uses HR to rubber stamp their decisions.

36. HR should function as the unbiased arbiter of employee concerns in order to have any credibility and encourage an open-door policy for employee concerns.

37. HR must ensure that the management decision making process during the entire employment life cycle, recruitment through termination, is based on sound HR protocols and policies designed to involve managers who are PMKs of the issues being addressed. There is an organizational structure "logic" that must be deployed to avoid top-down initiatives being pushed through the organization that may be in violation of policies and run the risk of liability.

38. HR Industry standards require that HR professionals ensure their policies and practices, and training are compliant with prohibitions against discrimination and retaliation against an employee for exercising their FMLA rights – Per DOL Employer's Guidance –

    *"Employers are prohibited from discriminating or retaliating against an employee or prospective employee for having exercised or attempting to exercise any FMLA right. Examples include:*
    *• Using the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions, or disciplinary actions.*
    *• Counting FMLA leave under "no fault" attendance policies, or*
    *• Failing to provide benefits to an employee on unpaid FMLA leave if the employer provides those benefits to employees who use other types of unpaid leave.*

HR._RP000012



*From DOL Fact Sheet #28G dated March 2023 –* **When the deadline is not met.** Generally, the employee must provide the requested certification to the employer within 15 calendar days after the employer's request. If an employee fails to return the certification in a timely manner, the employer can deny FMLA protections for the leave following the expiration of the 15-calendar day period until a complete and sufficient certification is provided. However, the leave taken during 15-day period and the period of absence beginning the day the complete certification was **received** is FMLA-protected leave.

When an employee makes diligent, good faith efforts but is still unable to meet the deadline for submission – at least 15-calendar days from the request – the employee is entitled to additional time to provide the certification. In this circumstance, the employer may not deny the leave for the period that the certification was late.

*All of my opinions are given to a reasonable degree of Human Resource and professional certainty and may be seasonably supplemented as additional documents become available for my review. My opinions are based upon my education, training, and experience as well as my review of materials provided, independent research and other materials.*

**Signed - /s/ Ramona Powell**

**List of materials, Sources and Publications relied on for some opinions –**
**Complaint**

1. [Take Time to Plan Out Your Workplace Investigation Interviews](#)

2. [How to Conduct a Workplace Investigation](#)

3. [ADA: Reasonable Accommodation/Interactive Process](#)

4. [ADA's Interactive Process Is a Two-Way Street](#)

5. [ADA Interactive Process Is a Means, Not an End](#)

6. [The ADA: Your Responsibilities as an Employer | U.S. Equal Employment Opportunity Commission (eeoc.gov)](#)

7. [An employer's duty to initiate the 'interactive process' without a request for accommodation from the employee - McAfee & Taft](#)

HR._RP000013



**Testimony Log**
**Ramona Powell – exPRt HR Consulting LLC**

April 2021 - Present

| Case Name | Case Number | Law Firm, Location | Work Status |
|---|---|---|---|
| Estes vs. CVS | BC598644 | Bohm Law Group – Orange County | Deposition |
| Brenda Bridgeford vs. City of Coronado | 37-2018-00051939-CU-WT-CTL | Bohm Law Group – San Diego County | Deposition |
| Wright vs. Sutter Health | CV-18-002049 | Bohm Law Group – County of Stanislaus | Deposition |
| Bailey vs. Sutter Health | 2026940 | Bohm Law Group – County of Stanislaus | Deposition, Trial Testimony |
| Pywell vs. Sutter Health | 34-2019-00266842 | Bohm Law Group – County of Sacramento | Deposition |
| Van Der Linden, et al. v. BAE Systems Inc. | 37-2019-00024826-CU-WT-CTL | Bohm Law Group – San Diego | Deposition and trial testimony |
| Sansen vs. Aerojet | 34-2015-00175120 | Whelan Law - Sacramento | Deposition, Trial Testimony |
| Kuipers vs. Drake Tower | No. 1:23-CV-15115 | Glenn Dunn and Associates | Deposition |
| Malekzadeh vs. Costco | No. 34-2022-0317520 | Emily Nugent Law | Deposition, Trial Testimony |
| Cliver vs. General Dynamics | No. SCV-270586 | Gomerman Bourn and Associates | Deposition |
| Ross vs. County of Santa Clara | #20CV362389 | Bohm Law Group – County of Santa Clara | Deposition |
| Hoang Nguyen vs. City of Los Angeles | #BC696016 | Blue Law Group – City of Los Angeles | Deposition |
| Majdali vs. CHOC | 8:23-cv-01813-JWH-DFM | Schonbrun Seplow Harris Hoffman & Zeldes LLP | Deposition |
| Bryan Fencl vs. AMP United | #37-2020-00021287-CU-WT-CTL | Bohm Law Group - San Diego County | Deposition |
| Baker vs. US Tech | #01-24-0002-5288 | Centurion Law | Deposition |
| Muhammad vs. CTA | 23cv02122 and 23cv02284 | Wade Law | Deposition |

HR._RP000014