UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RON LOMBOY,<br><br>   Plaintiff,<br><br>   v.<br><br>WELLS FARGO BANK, NATIONAL ASSOCIATION,<br><br>   Defendant. | Case No. 24-cv-04168-HSG<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION TO CONSIDER WHETHER MATERIAL SHOULD BE SEALED**<br><br>Re: Dkt. Nos. 45, 52 |

Pending before the Court are Defendant's motion for summary judgment, Dkt. No. 45 ("Mot."), 53 ("Opp."), 55 ("Reply"), and Plaintiff's motion to consider whether another party's material should be sealed, Dkt. No. 52. The Court finds these matters appropriate for disposition without oral argument and the matters are deemed submitted. *See* Civil L.R. 7-1(b). Having carefully considered the parties' arguments, the Court (1) **DENIES** Defendant's motion for summary judgment, Dkt. No. 45; (2) **DISMISSES** Plaintiff's UCL claim without prejudice; and (3) **DENIES** Plaintiff's motion to consider whether another party's material should be sealed, Dkt. No. 52.

**I.   BACKGROUND**[1]

Plaintiff Ron Lomboy worked at Wells Fargo from 2007 until his termination in January 2024. Dkt. No. 53-3, Ex. B ("PMK Dep.") 92:9–93:13, 156:17–157:5. Plaintiff began experiencing vision loss, headaches, and hearing loss in late 2020. *Id.* 119:6–120:8; Dkt. No. 53-3, Ex. A ("Lomboy Dep.") 165:6–166:8. Plaintiff took medical leave between April 2022 and May 2022. PMK Dep. 138:22–139:7. Plaintiff contends that he asked to take leave until June

---

[1] At this stage, the Court views the record in the light most favorable to Plaintiff, and makes all reasonable inferences in his favor.

1  2022, but his supervisor, Regina Gentry, told him that she would hire someone to fill his role if he
2  did not come back to work in May 2022. Lomboy Dep. 194:2–195:11; Dkt. No. 52-4, Ex. 7 at
3  WFB006354. After returning, Plaintiff contends that he received his first ever performance
4  review with a rating below "meets expectations." *See* PMK Dep. 94:15–100:11; Dkt. No. 52-4,
5  Ex. 1 at 3. He also contends that he was pressured to transfer to a smaller branch in Walnut Creek
6  around this time. Lomboy Dep. 68:15–70:20. Plaintiff then took a second medical leave between
7  June 2023 and August 2023. PMK Dep. 149:2–11. Shortly after his return, Wells Fargo began an
8  investigation into an incident where he opened a bank account for a minor who Wells Fargo
9  claims was unemancipated, allegedly in violation of Wells Fargo's policies. *See* Dkt. No. 53-3,
10 Ex. D ("Hitchcock Dep.") 185:4–22; Dkt. No. 53-3, Ex. E ("Valdez-Hernandez Dep.") 192:2–14;
11 *see also* Mot. at 19. Following an investigation, Plaintiff was terminated in January 2024. PMK
12 Dep. 156:17–157:5.
13      In June 2024, Plaintiff filed the operative Complaint, Dkt. No. 1-1 ("Compl."), which
14 asserts eleven claims against Defendant, including harassment, various discrimination and
15 retaliation claims in violation of FEHA and the FMLA/CFRA, and a violation of California's
16 Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code section 17200, *et seq.* Defendant
17 removed. Dkt. No 1. Following discovery, Defendant filed this motion for summary judgment.
18 Dkt. No. 45.

19 **II.     DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
20     **A. Legal Standard**
21      Summary judgment is proper when a "movant shows that there is no genuine dispute as to
22 any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).
23 A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*
24 *v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute is "genuine" if there is evidence
25 in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party. *Id.*
26 But in deciding if a dispute is genuine, the court must view the inferences reasonably drawn from
27 the materials in the record in the light most favorable to the nonmoving party, *Matsushita Elec.*
28 *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986), and "may not weigh the evidence

or make credibility determinations," *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008). "If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1103 (9th Cir. 2000). In doing so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. A nonmoving party must also "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quotation omitted). If a nonmoving party fails to produce evidence that supports its claim or defense, courts enter summary judgment in favor of the movant. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## B. Discussion

Defendant moves for summary judgment on each of Plaintiff's claims. First, Defendant argues that Plaintiff's discrimination and retaliation claims fail because Defendant dismissed Plaintiff for the legitimate business reason of violating Wells Fargo's policies. Mot. at 20–24. Second, Defendant argues that Plaintiff's claims for failure to engage in the interactive process, failure to accommodate, and CFRA/FMLA interference fail because Defendant provided Plaintiff with every accommodation and leave that he requested. *Id.* at 25–27. Third, Defendant argues that Plaintiff has not shown "severe or pervasive" harassment. *Id.* at 27–29. Fourth, Defendant argues that Plaintiff lacks standing to pursue injunctive relief under the UCL. *Id.* at 30. Fifth, Defendant argues that Plaintiff is not entitled to punitive damages because nobody involved in the lawsuit was Defendant's officer, director, or managing agent, and the alleged conduct does not constitute malice or oppression. *Id.* at 30–31. The Court agrees that Plaintiff lacks standing to bring a UCL claim. But the Court finds that the remaining claims have at least one material issue in dispute and are not appropriate for summary judgment.

### 1. Disability Discrimination (Count 1)

Plaintiff alleges that Defendant discriminated against him and terminated his employment on the basis of his disability in violation of FEHA. FEHA prohibits employers from

3

discriminating against employees because of a disability.  Cal. Gov't Code § 12940(a).  Under FEHA, a plaintiff may "give rise to an inference of unlawful discrimination, either through the framework set forth in *McDonnell Douglas Corp. v. Green* or with direct or circumstantial evidence of discriminatory intent."  *Vasquez v. Cnty. of L.A.*, 349 F.3d 634, 640 (9th Cir. 2003), *as amended* (Jan. 2, 2004) (citations omitted) (cleaned up).  Generally, the plaintiff bears the initial burden to establish a prima facie case of discrimination.  *See Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998).  However, "[w]hen an employer moves for summary judgment . . . 'the burden is reversed . . . because the defendant who seeks summary judgment bears the initial burden.'"  *Dep't of Fair Emp. & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 745 (9th Cir. 2011) (quoting *Hanson v. Lucky Stores, Inc.*, 87 Cal. Rptr. 2d 487, 493 (1999)).  Therefore, "[t]o prevail on summary judgment, [the employer is] required to show either that (1) plaintiff could not establish one of the elements of [the] FEHA claim or (2) there was a legitimate, nondiscriminatory reason for its decision to terminate plaintiff's employment."  *Dep't of Fair Emp.*, 642 F.3d at 745 (quoting *Avila v. Cont'l Airlines, Inc.*, 82 Cal. Rptr. 3d 440, 449 (2008)).

      Here, Defendant adopts the latter approach, arguing that it terminated Plaintiff's employment for a legitimate, non-discriminatory reason.[2]  Mot. at 21–24.  To establish a legitimate, nondiscriminatory reason for its decision to terminate Plaintiff, Defendant must demonstrate that "the procedure by which [Plaintiff] was terminated was validly and fairly devised and administered to serve a legitimate business purpose."  *Hanson*, 87 Cal. Rptr. 2d at 492–93 (quotation omitted).  The "burden then shifts to the employee to prove that 'the proffered justification is mere pretext.'"  *Id*. (quotation omitted).  Here, Defendant contends that it terminated Plaintiff's employment "for failing to comply with its policies and for obstructing investigations."  Mot. at 21.  Defendant argues that Plaintiff knowingly opened an account for an unemancipated minor using a fabricated document and then lied about it.  *See id.* at 21–22.  Plaintiff disputes this characterization, arguing that he followed the steps he was given by the "Banker Connection" help service for guidance when opening the minor's account, and that he

---

[2] Defendant does not argue that Plaintiff failed to show an element of his prima facie case.

4

secured a signed agreement from the minor, in compliance with Wells Fargo's policy allowing non-court orders in certain circumstances. Opp. at 21–22. Plaintiff argues that he was terminated because of his disability. *Id.* at 22–24.

As the Ninth Circuit has repeatedly instructed, "very little evidence is necessary to raise a genuine issue of fact regarding an employer's motive" and "any indication of discriminatory motive may suffice to raise a question that can only be resolved by a fact-finder." *Nicholson v. Hyannis Air Serv., Inc.*, 580 F.3d 1116, 1127 (9th Cir. 2009) (quotation omitted); *see Chuang v. Univ. of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115, 1124 (9th Cir. 2000) ("As a general matter, the plaintiff in an employment discrimination action need produce very little evidence in order to overcome an employer's motion for summary judgment. This is because 'the ultimate question is one that can only be resolved through a searching inquiry—one that is most appropriately conducted by a factfinder, upon a full record.'" (quoting *Schnidrig v. Columbia Mach., Inc.,* 80 F.3d 1406, 1410 (9th Cir. 1996))).

Here, Plaintiff has met that low bar. A reasonable factfinder could conclude, for example, that "[t]he close timing between Mr. Lomboy's medical leaves and the adverse actions he suffered after 17 years of employment with no history of discipline creates a strong inference" of a discriminatory motive. Opp. at 23. Plaintiff has put forth evidence showing that the investigations into his actions took place about a month after he took his 2023 medical leave, and that his performance reviews were all positive from 2007 until he began experiencing symptoms of his disability in 2020. *See* Valdez-Hernandez Dep. 192:2–14 (September 2023 start of investigation); PMK Dep. 94:15–100:11, Dkt. No. 52-4, Ex. 1 at 3 (pre-2021 reviews); PMK Dep. 119:6–120:8 (2020 onset of symptoms).[3] In addition, a reasonable factfinder could credit Plaintiff's evidence that Defendant's investigation into his alleged breach of policy was deficient, including because the investigator did not preserve the security footage that allegedly showed Plaintiff forging documents and did not interview witnesses that Plaintiff had told her could prove

---

[3] The Court cites to the record where appropriate to highlight evidence that, when viewed in the light most favorable to the non-moving party, establishes a genuine dispute of fact. This is not a comprehensive catalogue of all evidence supporting these claims.

he spoke with Banker Connection for guidance. *See* Valdez-Hernandez Dep. 106:18–109:19 (security footage); Lomboy Dep. 273:12–18, Valdez-Hernandez Dep. 120:13–18 (witnesses). Together, the temporal proximity between Plaintiff's leaves and the investigation, the sudden poor performance reviews, and the limitations of the investigation establish the kind of weakness or implausibility "in the employer's proffered legitimate reasons for its action [based on which] a reasonable factfinder could rationally find them unworthy of credence." *Dep't of Fair Emp.*, 642 F.3d at 746 (quotation omitted); *see also Little v. Windermere Relocation, Inc.*, 265 F.3d 903, 915 (9th Cir. 2001), *opinion amended and superseded on denial of reh'g,* 301 F.3d 958 (9th Cir. 2002) (reversing summary judgment and finding that proximity of events and history of performance constituted sufficient evidence to raise a genuine issue of fact regarding pretext).

Defendant argues that the investigation that prompted Plaintiff's termination was adequately supported and that other evidence suggests the termination was not pretextual. Mot. at 22–24. The parties also dispute whether the investigator and various Wells Fargo employees had knowledge of Plaintiff's disability. *Compare* Reply at 7, *with* Opp. at 8 (citing Hitchcock Dep. 104:1–105:10). But these are all disputes of fact that are appropriately resolved at trial.[4] Drawing all reasonable inferences in favor of Plaintiff, there is at least one genuine dispute of material fact as to the reasons for Plaintiff's termination that precludes the Court from resolving Plaintiff's FEHA discrimination claims at the summary judgment stage. *See Gonzales v. Organogenesis, Inc.*, 766 F. App'x 474, 476 (9th Cir. 2019) ("Summary judgment is 'generally unsuitable' for employment discrimination cases . . . 'because of the elusive factual question of intentional discrimination.'" (quotation omitted)).[5] Accordingly, the Court DENIES summary judgment with respect to the discrimination claim.

---

[4] The Court is not persuaded that *Jameson v. Pacific Gas & Electric Co.*, 16 Cal. App. 5th 901, 912 (2017), requires summary judgment. That case involved several factual distinctions identified by Plaintiff, *see* Opp. at 24, and the jury here would be considering the inadequacy of the investigation in conjunction with other evidence supporting an inference of pretext. This is more than enough to establish a triable issue regarding pretext.

[5] As an unpublished Ninth Circuit decision, *Gonzalez* is not precedent, but may be considered for its persuasive value. *See* Fed. R. App. P. 32.1; CTA9 Rule 36-3.

6

**2. Retaliation Claims (Counts 5, 7)**

Plaintiff alleges that Defendant retaliated against him for "taking multiple disability leaves, including leave under FMLA/CFRA." Opp. at 25. He brings one joint claim for retaliation in violation of the CFRA and FLMA and one claim for retaliation in violation of FEHA.

The California Family Rights Act (CFRA) and Family and Medical Leave Act (FMLA) provide employees a right to protected leave. *See* Cal. Gov't Code § 12945.2(k)(1); 29 U.S.C. § 2615. A cause of action for CFRA retaliation requires "(1) the defendant was an employer covered by CFRA; (2) the plaintiff was an employee eligible to take CFRA leave; (3) the plaintiff exercised her right to take leave for a qualifying CFRA purpose; and (4) the plaintiff suffered an adverse employment action, such as termination . . . because of her exercise of her right to CFRA leave." *Avila,* 165 Cal. App. 4th at 1254.[6] Courts apply the same *McDonnell Douglas* framework to CFRA/FLMA retaliation claims. *Moore v. Regents of Univ. of Cal.*, 248 Cal. App. 4th 216, 248 (2016).

FEHA prohibits an employer from terminating or discriminating against any employee "because the person has opposed any practices forbidden" under FEHA or has "filed a complaint, testified, or assisted in any proceeding" under FEHA. Cal. Gov't Code § 12940(h). A claim for FEHA retaliation requires "(1) the employee's engagement in a protected activity, i.e., 'oppos[ing] any practices forbidden under this part'; (2) retaliatory animus on the part of the employer; (3) an adverse action by the employer; (4) a causal link between the retaliatory animus and the adverse action; (5) damages; and (6) causation." *Mamou v. Trendwest Resorts, Inc.*, 165 Cal. App. 4th 686, 713 (2008). Courts also apply the *McDonnell Douglas* framework to FEHA retaliation claims. *Santillan v. USA Waste of Cal., Inc.*, 853 F.3d 1035, 1046 (9th Cir. 2017) (citing *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005)).

Defendant has not met its burden for summary judgment on Plaintiff's retaliation claims.

---

[6] Plaintiff treats his CFRA and FMLA claims as single causes of action. *See, e.g.*, Compl. ¶¶ 113–127. Neither party attempts to distinguish the CFRA and FMLA in the briefing here. Since courts have "previously concluded that identical standards apply to the FMLA and to the CFRA," the Court will treat these identically for the purposes of this Order. *See Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1242 (9th Cir. 2014).

7

Defendant's motion does not distinguish between Plaintiff's discrimination and retaliation claims, and Defendant argues that the retaliation claims are barred because Plaintiff was terminated for legitimate business reasons. Mot. at 21–24. Defendant does not dispute that Plaintiff took a protected CFRA/FMLA medical leave in 2023. For the reasons stated above, there is a triable issue of fact as to whether Wells Fargo's stated business reason for terminating Plaintiff was a pretext to fire him for taking his protected leaves. The highly fact-bound determination of the reasons for Plaintiff's termination is not appropriate for the Court to make at the summary judgment stage. Accordingly, the Court DENIES summary judgment as to Plaintiff's retaliation claims.

### 3. Failure to Engage in the Interactive Process/Failure to Accommodate (Counts 2, 3)

Plaintiff argues that employers have an affirmative duty to reasonably accommodate employees and engage in a timely, good faith interactive process when the employer knows or should know about the employee's disability. Opp. at 25–26. He argues that Wells Fargo knew about his disabilities, did not discuss additional accommodations with him, forced him to work at an extremely understaffed branch, denied him accommodations that could have supported his recovery, denied him the opportunity to stay on disability leave through June 2022, and pressured him to accept a demotion. *Id.* at 26. Defendant argues that Plaintiff's failure to accommodate and failure to engage in the interactive process claims are "not actionable" because Wells Fargo provided multiple accommodations—including two leaves of absence and the option to go home early or lay down as needed—and because Plaintiff never requested any additional accommodation. Mot. at 25–26. Defendant argues that "it is axiomatic that Wells Fargo need not provide an accommodation [Plaintiff] did not ask for." *Id.*

It is unlawful for an employer to "fail to make reasonable accommodation for the known physical or mental disability of an . . . employee." Cal. Gov't Code § 12940(m)(1). An employer "cannot prevail on summary judgment on a claim of failure to reasonably accommodate unless it establishes through undisputed facts" that (1) "reasonable accommodation was offered and refused"; (2) "there simply was no vacant position within the employer's organization for which

8

the disabled employee was qualified and which the disabled employee was capable of performing with or without accommodation"; or (3) "the employer did everything in its power to find a reasonable accommodation, but the informal interactive process broke down because the employee failed to engage in discussions in good faith." *See Dep't of Fair Emp't*, 642 F.3d at 745 (quoting *Jensen v. Wells Fargo Bank*, 85 Cal. App. 4th 245, 263 (2000)) "[A] finite leave can be a reasonable accommodation under FEHA, provided it is likely that at the end of the leave, the employee would be able to perform his or her duties." *Hanson*, 74 Cal. App. 4th at 226. "It is clear that California law affords [plaintiff] a right to a reasonable accommodation, regardless of whether he specifically sought it." *Dep't of Fair Emp't*, 642 F.3d at 744 n.16.

The Court finds that there is at least one triable issue of fact as to Plaintiff's failure to reasonably accommodate claim. For example, Plaintiff has introduced evidence that he requested medical leave from April 2022 to mid-June 2022, but Ms. Gentry told him that she would post his position for other candidates if he did not return in May. Lomboy Dep. 194:2–195:11; Dkt. No. 52-4, Ex. 7 at WFB006354. A jury could find that this leave, even if not statutorily protected under FMLA or CFRA, was a reasonable accommodation that Plaintiff was denied. *See A.M. v. Albertsons, LLC*, 178 Cal. App. 4th 455, 465 (2009) (noting that a single failure to accommodate can be actionable).

For similar reasons, the Court concludes there is at least one triable issue of fact as to Plaintiff's failure to engage in the interactive process claim. Section 12940(n) of FEHA makes it unlawful for an employer to "fail to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability." Cal. Gov't Code § 12940(n). Defendant had an affirmative obligation to begin the process, given that Plaintiff's "disability and resulting limitations [were] obvious." *See Scotch v. Art Inst. of Cal.*, 173 Cal. App. 4th 986, 1013 (2009). "[T]he fact that an employer took some steps to work with an employee to identify reasonable accommodations does not absolve the employer of liability under section 12940(n). If the employer is responsible for a later breakdown in the process, it may be held liable." *Moss v. City & Cnty. of San Francisco*, 714 F. Supp. 3d

1167, 1183 (N.D. Cal. Feb. 2, 2024) (quoting *Nadaf-Rahrov v. Neiman Marcus Grp., Inc.*, 166 Cal. App. 4th 952, 985 (2008)).  There is at least a triable issue of fact as to whether Ms. Gentry's decision to require Plaintiff to return in May 2022, allegedly without any corresponding efforts to coordinate additional accommodations, gives rise to liability.  Accordingly, the Court DENIES summary judgment as to Plaintiff's failure to accommodate and failure to engage claims.

### 4. CFRA/FMLA Interference (Count 6)

Plaintiff alleges that Defendant discouraged him from using his CFRA/FMLA leaves. Opp. at 26–27.  Employers may not "interfere with, restrain, or deny the exercise of, or the attempt to exercise, any right" provided by the CFRA.  Cal. Gov't Code § 12945.2(q).  "A CFRA interference claim 'consists of the following elements: (1) the employee's entitlement to CFRA leave rights; and (2) the employer's interference with or denial of those rights." *Moore*, 248 Cal. App. 4th at 250 (quotation omitted).  Similarly, a FMLA claim requires a plaintiff to show: "(1) he was eligible for the FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled." *Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011) (citation omitted).

Defendant argues that Plaintiff requested only two leaves of absence, both of which it granted. Mot. at 26–27.  But "[i]nterfering with the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." 29 C.F.R. § 825.220(b); *see also Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1133 (9th Cir. 2003) (noting discouragement can constitute FMLA interference); *Hurley v. Pechiney Plastic Packaging, Inc.*, No. C 05-05028 JSW, 2006 WL 708656, at *3 (N.D. Cal. Mar. 16, 2006) (applying the FMLA standards to a CFRA interference claim).  Plaintiff presents evidence that Defendant discouraged him from exercising his right to take leaves in violation of the CFRA and FMLA by threatening to replace him while on leave and giving him negative performance evaluations when he returned.  Lomboy Dep. 194:2–195:11; PMK Dep. 94:15–100:11; Dkt. No. 52-4, Ex. 1 at 3.  Defendant does not explain why a jury couldn't find this discouraged Plaintiff from using his CFRA and FMLA leaves.  Since there is at least one material

10

1   dispute, the Court DENIES summary judgment on Plaintiff's interference claim.

2   **5. Disability Harassment (Count 4)**

Defendant argues that Plaintiff's disability harassment claim fails because there were no "severe or pervasive" actions taken against him, and the alleged conduct does not constitute harassment. Mot. at 27–28. Defendant emphasizes that Plaintiff agrees that no one at Wells Fargo made any derogatory or inappropriate comments about his disabilities. *Id.* at 28. Plaintiff points to four possible bases for his claim: (1) Ms. Gentry's threat to replace him while he was on protected disability leave; (2) ongoing criticism by Ms. Gentry after he returned, including in performance reviews; (3) Ms. Gentry's pressured demotion of Plaintiff to a smaller, less desirable branch; and (4) false accusations of fraud made by Mr. Hitchcock and others in relation to Lomboy's termination. Opp. at 27–28 (citing Ms. Gentry and Mr. Lomboy's depositions).

To establish a harassment claim, Plaintiff must show "(1) he was a member of a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his disability; (4) the harassment unreasonably interfered with his work performance by creating an intimidating, hostile, or offensive work environment; and (5) [Defendant] is liable for the harassment." *Thompson v. City of Monrovia*, 186 Cal. App. 4th 860, 876 (2010). Harassment must be "sufficiently severe or pervasive to alter the conditions of [] employment and create an abusive work environment." *Bailey v. S.F. Dist. Att'ys Off.*, 16 Cal. 5th 611, 627 (2024).

Harassment is distinct from discriminatory conduct. "Courts have employed the concept of delegable authority as a test to distinguish conduct actionable as discrimination from conduct actionable as harassment [and] find that the exercise of personnel management authority properly delegated by an employer to a supervisory employee might result in discrimination, but not in harassment." *Reno v. Baird*, 18 Cal. 4th 640, 646 (1998) (quotation omitted). "Thus, harassment focuses on situations in which the *social environment* of the workplace becomes intolerable because the harassment (whether verbal, physical, or visual) communicates an offensive message to the harassed employee." *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 706 (2009), *as modified* (Feb. 10, 2010) (emphasis in original). However, in some cases, "official employment actions [can constitute] the evidentiary basis of the harassment cause of action, because the

11

supervisor used those official actions as his means of conveying his offensive message. . . . This occurs when the actions establish a widespread pattern of bias." *Id.* at 708–09.

The Court finds that there is a triable issue of fact as to whether Ms. Gentry's official employment actions constituted harassment. It is true that all four of Plaintiff's examples of harassment involve the exercise of personnel management authority, including hiring and firing, demotions and promotions, and performance reviews. But the Court is aware of no binding authority that requires it to hold as a matter of law that no jury could reasonably conclude that this pattern of official actions established a "widespread pattern of bias" that created a hostile or offensive work environment. *Roby*, 47 Cal. 4th at 708–09; *see also Rico v. Jones Lang LaSalle Americas, Inc.*, No. CV 14-1322-GHK JEMX, 2014 WL 1512190, at *3 (C.D. Cal. Apr. 16, 2014) (declining to dismiss a harassment claim where supervisor attempted to demote plaintiff, expressed frustration about leave, and gave an unwarranted negative performance review).[7] For these reasons, the Court DENIES summary judgment as to the harassment claim.

### 6. UCL (Count 11)

Defendant argues that Plaintiff lacks standing to pursue injunctive relief as a former employee who is not alleging a claim for restitution. Mot. at 30. "A UCL action is equitable in nature; damages cannot be recovered." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003). "[P]revailing parties are generally limited to injunctive relief and restitution." *Id.* (quotation omitted). Plaintiff does not dispute that he is not seeking restitution, and the Court cannot find any reference to restitution in the pleadings. *See* Compl. ¶ 150 (alleging entitlement to "damages"); Opp. at 29 (arguing only for injunctive relief). Instead, Plaintiff argues that "he is entitled to pursue equitable remedies, including injunctive relief to prevent future violations and

---

[7] Many courts confronting harassment claims deny summary judgment where official employment actions are alleged *in addition to* some sort of derogatory comment, which is not the case here. *See, e.g.*, *Landucci v. State Farm Ins. Co.*, 65 F. Supp. 3d 694, 704–07 (N.D. Cal. 2014). But this is not a legal requirement, and whether official actions create a hostile work environment absent other derogatory comments is a question for the jury. *See Lee, v. Marriott Int'l, LLC.*, No. 25-CV-01169-EMC, 2025 WL 2689263, at *11 (N.D. Cal. Sept. 21, 2025) ("Although the harassment in *Roby* did include harassing conduct apart from official employment actions . . . the California Supreme Court did not hold that such conduct is essential to support a harassment claim, let alone that such conduct by severe or pervasive in and of itself before official employment actions may be considered.").

12

correct the systemic failures that led to his termination." Opp. at 29. But to have standing to seek injunctive relief, a plaintiff "must demonstrate that they are realistically threatened by a *repetition* of the violation." *Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006) (quotation omitted) (emphasis in original). Courts routinely reject claims for injunctive relief brought by ex-employees who do not allege any risk of future harm. *See, e.g.*, *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 988 (9th Cir. 2011) ("[O]nly current employees have standing to seek injunctive relief."); *Circle Click Media LLC v. Regus Mgmt. Grp. LLC*, No. 12-CV-04000-EMC, 2016 WL 3879028, at *4 (N.D. Cal. July 18, 2016), *aff'd*, 743 F. App'x 883 (9th Cir. 2018) (rejecting injunctive relief under UCL where plaintiff was no longer in contractual relationship with defendant).

Because Plaintiff lacks standing for the injunctive relief apparently sought, the Court DENIES Defendant's motion for summary judgment as to the UCL claim, but DISMISSES the claim without prejudice. See *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1313 (9th Cir. 2022) ("Because the district court lacked equitable jurisdiction . . . it should have denied [defendant's] motion for summary judgment and dismissed [plaintiff's] UCL claim without prejudice for lack of equitable jurisdiction.").[8]

### 7. Failure to Prevent Discrimination, Harassment, and Retaliation, Wrongful Termination, and Intentional Infliction of Emotional Distress (Counts 8, 9, 10)

Defendant argues that Plaintiff's claims for (1) failure to prevent discrimination, harassment, and retaliation; (2) wrongful termination; and (3) intentional infliction of emotional

---

[8] The Court is in the unusual position of confronting a UCL claim for the first time on summary judgment when Defendant has not also argued that the Court lacks equitable jurisdiction. *See Guzman*, 49 F.4th at 1313. While *Guzman* required dismissal because of a lack of equitable jurisdiction rather than a lack of standing, the Court finds *Guzman*'s reasoning for dismissal persuasive here. *Compare id.* at 1315 ("But where federal law bars us from considering the merits of state-law claims, we also lack authority to prevent state courts from doing so."), *with Circle Click*, 2016 WL 3879028, at *4 ("[W]hile [plaintiff] may satisfy the standing requirements of section 17204, it lacks Article III standing to seek injunctive relief under the UCL because it has not shown any threat of future injury."). Moreover, the Court is skeptical given the record before it that Plaintiff lacks an adequate remedy at law, meaning that the Court may not have equitable jurisdiction. *See Crowder v. Shade Store, LLC*, No. 23-CV-02331-NC, 2025 WL 754067, at *3 (N.D. Cal. Mar. 10, 2025) (collecting cases addressing whether monetary damages are an adequate remedy in suits requesting injunctive relief from future harm). Absent any clear authority on point, and given the parties' failure to address these nuances, the Court finds that dismissal is the best option here.

13

distress are all derivative of Plaintiff's other claims and are necessarily entitled to summary judgment. Mot. at 29 n.120; Reply at 18 n.34. Since the Court denies summary judgment as to Plaintiff's discrimination and retaliation claims and since Defendant offers no alternative arguments in favor of summary judgment on these derivative claims, the Court DENIES Defendant's motion for summary judgment as to these three claims.

### 8. Punitive Damages

Plaintiff alleges that Defendant's "conduct constitutes oppression, fraud, and/or malice under California Civil Code section 3294" and seeks punitive damages. Compl. ¶ 51; *see also* Opp. at 29–30. Defendant moves for summary judgment on Plaintiff's claim for punitive damages, arguing that (1) the alleged conduct does not rise to the level of malice or oppression that warrants punitive damages ; and (2) the actors in the lawsuit are not officers, directors, or managing agents who could trigger liability for punitive damages. Mot. at 30–31.

California Civil Code section 3294 allows for punitive damages only when "it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice" and limits corporate employer liability to instances where an officer, director, or managing agent has advance knowledge and consciously disregards, authorizes, or ratifies the wrongful conduct. *Id.* § 3294(a)–(b). "'Malice' means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." *Id.* § 3294(c)(1). "'Oppression' means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." *Id.* § 3294(c)(2). And a "managing agent must be someone who exercises substantial discretionary authority over decisions that ultimately determine corporate policy. *White v. Ultramar, Inc.*, 21 Cal. 4th 563, 573 (1999). Corporate policies "affect a substantial portion of the company and . . . are the type likely to come to the attention of corporate leadership." *Roby*, 47 Cal. 4th at 715. "[I]n the usual case, the question of whether the defendant's conduct will support an award of punitive damages is for the trier of fact, 'since the degree of punishment depends on the peculiar circumstances of each case.'" *Spinks v. Equity Residential Briarwood Apartments*, 171 Cal. App. 4th 1004, 1053 (2009) (quotation omitted).

Having reviewed the record, and considering the evidence above, the Court cannot conclude as a matter of law at this stage that no reasonable jury could find clear and convincing evidence that Defendant acted with "willful and conscious disregard" of Plaintiff's rights (malice) or inflicted "cruel and unjust hardship" upon him "in conscious disregard" of his rights (oppression). *See* Cal. Civ. Code § 3294(c)(1)–(2). Likewise, the Court cannot determine as a matter of law that Ms. Gentry and Mr. Hitchcock were not managing agents given their discretionary disciplinary decisions and their broad management of branches. "The scope of an employee's discretion and authority is a question of fact." *Tilkey v. Allstate Ins. Co.*, 56 Cal. App. 5th 521, 554 (2020). Plaintiff presents evidence that Ms. Gentry and Mr. Hitchcock oversaw hundreds of employees and dozens of branches. PMK Dep. 28:14–19, 31:10–13; Hitchcock Dep. 37:9–38:13, 132:16–18. He also presents evidence that they exercised broad authority over personnel matters, including the power to hire, discipline, and terminate employees, and to disregard or enforce Defendant's progressive discipline policy. PMK Dep. 213:5–10; Dkt. No. 53-3, Ex. C ("Gentry Dep.") 38:17–39:3, 137:7–21; Hitchcock Dep. 36:10–37:2, 53:12–21, 61:2–5; *cf. Tilkey*, 56 Cal. App. 5th at 555 (finding that a supervisor "would make the decisions about discipline" and "[i]n doing so, [] formulated operational corporate policy at least related to discipline and attendance"). As a result, this is the "usual case" in which an assessment of whether Plaintiff's evidence can clear the high bar necessary to recover punitive damages must await the presentation of a full factual record at trial. *See Spinks*, 171 Cal. App. 4th at 1053. The Court DENIES Defendant's motion for summary judgment as to punitive damages.

### III. ADMINISTRATIVE MOTION TO SEAL

Also pending before the Court is Plaintiff's motion to consider whether another party's material should be sealed. Dkt. No. 52. Courts generally apply a "compelling reasons" standard when considering motions to seal documents. *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010) (quoting *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006)). "This standard derives from the common law right 'to inspect and copy public records and documents, including judicial records and documents.'" *Id.* (quoting *Kamakana*, 447 F.3d at 1178). But when a party seeks to seal a document that has been designated as confidential by

another party or non-party, the party filing the sealing motion need not satisfy the showing described above. *See* Civ. L-R 79-5(f)(1). Instead, within seven days of the motion's filing, the designating party must file a statement or declaration justifying the reasons for keeping the document or information under seal. *Id.* 79-5(f)(3). A failure to file a statement or declaration may result in the unsealing of the provisionally sealed material without further notice to the designating party. *Id.*

Dkt. No. 52 pertains to materials filed in connection with Plaintiff's opposition to Defendant's motion for summary judgment. The Court **DENIES** Dkt No. 52, as Defendant did not file a declaration or response presenting a basis for sealing any other documents or information. *See* Civ. L.R. 79-5(f)(3) ("A failure to file a statement or declaration may result in the unsealing of the provisionally sealed document without further notice to the Designating Party."). The Court **DIRECTS** the Plaintiff to file unredacted versions of the exhibits in support of his opposition brief on the public docket within 7 days of this order.

IV. **CONCLUSION**

The Court **DENIES** Defendant's motion for summary judgment, Dkt. No. 45, and the Court **DISMISSES** Plaintiff's UCL claim **WITHOUT PREJUDICE**.[9] The Court's summary judgment holdings here are based on the stringent standards for obtaining summary judgment in employment cases, and the Court expresses no view as to whether a jury ultimately will find Plaintiff's case persuasive. *See Yartzoff v. Thomas*, 809 F.2d 1371, 1377–78 (9th Cir. 1987). Additionally, the Court **DENIES** Plaintiff's motion to consider whether another party's material should be sealed, Dkt. No. 52.

---

[9] Plaintiff also requests the Court take judicial notice of the complaint filed in *Alvarado v. Wells Fargo Bank, N.A.*, No. 24-CV-05638-VC (N.D. Cal. Jan. 8, 2025), Dkt. No. 21. *See* Dkt. No. 53-2. Defendant objects, and separately requests the Court take judicial notice of an order granting a motion to withdraw the complaint in that case. *See* Dkt. No. 55-2 (request); Dkt. No. 55-5 (objection). The parties' requests for judicial notice are denied as moot because the Court did not rely on any of the attached (irrelevant) documents.

Additionally, to the extent Defendant filed separate evidentiary objections in reply to the motion for summary judgment, Dkt. No. 55-3, this was improper. Under the Local Rules, "[a]ny evidentiary and procedural objections to the opposition must be contained within the brief or memorandum." *See* Civil L.R. 7-4(a).

16

The Court further **SETS** a case management conference on October 16, 2025 at 1:00 p.m. The hearing will be held by Public Zoom Webinar. All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/hsg. All attorneys and pro se litigants appearing for the case management conference are required to join at least 15 minutes before the hearing to check in with the courtroom deputy and test internet, video, and audio capabilities.

**IT IS SO ORDERED.**

Dated: 10/10/2025

HAYWOOD S. GILLIAM, JR.
United States District Judge